Filed 6/17/21  P. v. Mullenix CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G059194 |
| v. | (Super. Ct. No. 06WF2607) |
| RACHAEL SCARLETT MULLENIX, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Terri K. Flynn-Peister, Judge.  Reversed.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, A. Natasha Cortina and Lynne G. McGinnis, Deputy Attorneys General for Plaintiff and Respondent.

In 2008, a jury convicted Rachael Scarlett Mullenix (Rachel) of first degree murder and she is serving a 25-years-to-life prison term. In October 2019, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) sent a letter to the superior court recommending that due to Mullenix's conduct in prison, her sentence be recalled and she be resentenced. The trial court issued an order summarily denying Mullenix's request to resentence and denying her subsequent motion to vacate that order in order to permit a hearing with representation and evidence.

Mullenix argues the trial court abused its discretion because it did not afford her an opportunity to present evidence in support of CDCR's recommendation before denying the resentencing request. The Attorney General concedes that for the limited purpose of determining whether to recall a sentence following CDCR's recommendation, the court should consider information from either the inmate or the prosecution if requested. We accept the concession and reverse.

FACTS

A complete recitation of the facts can be found in *People v. Mullenix* (May 12, 2010, G041068) [nonpub. opn.]. Suffice it to say, on September 13, 2006, the Newport Beach Police Department found the body of Barbara Mullenix (Barbara) floating in Newport Harbor. She suffered more than 50 stab wounds; criminalists later determined three or four different knives had been used in the murder. A butter knife remained embedded beneath one eye. The body was wrapped in sheets and a blanket. Investigators found a half-closed, four-inch pocketknife in the bedding. They also found a cardboard box for a large television floating near the body. Laboratory testing revealed Rachael's DNA on the duct tape used to seal the box.

The location of the homicide was a home in Huntington Beach where Rachael and her divorced parents resided. At the home, investigators found blood on the headboard, footboard, wall, mini blinds, nightstands, and carpet in Barbara's bedroom. The mattress and box spring were missing. Testing revealed Racheal's DNA on the non-bloodstained portions of Barbara's pillowcase. The body had been placed in a large cardboard box that was dragged to a vehicle near the home and then taken to the harbor.

Police arrested Rachael and her boyfriend, Ian Allen, in Louisiana. When interviewed, Racheal blurted out she had been kidnapped. After being advised of her rights, she told the detectives she fell asleep between 10:00 and 11:00 p.m. the night Barbara was killed. In the middle of the night, she awoke, hearing her mother screaming for her. She ran to Barbara's room and found Allen on top of her and stabbing her. Rachael tried to push Allen away, but he shoved her, knocking her out. According to Rachael, after Allen killed Barbara, he held a gun to Rachael's head, stating, "You're coming with me." She denied any involvement in the killing.

After being transported back to California, Rachael told the booking officer at the Huntington Beach jail that she feared Allen. She sought reassurance several times, "You're not going to let him hurt me, promise?" About 30 minutes later, as arranged by the detectives, the booking officer placed Rachael in a patrol car with Allen, where a tape recorder was hidden. She assured Allen, "If you go to prison and I get out, I'll wait for you." When she asked, "Did you tell them you kidnapped me," Allen responded, "They didn't buy that for a second . . . ." Rachael advised Allen to "plead insanity." She assured him, "I don't hate you . . . I'll never hate you. I'll love you til the day I die, do you understand that?" She promised, [I]f I make bail, and I get out of this somehow, I'm gonna change my identity and change my appearance and I'll come see you." The couple proceeded to tell each other several times, "I love you." Allen said he had killed Barbara for trying to get between him and Rachael.

At trial, Rachael testified she and Allen decided to run away together to escape her mother's abuse. They chose the night of September 12 because her father would be away. Their plan was to wait until Barbara fell asleep, then she would meet Allen outside her home in his truck and they would drive to Florida. According to Rachael, Allen entered the condominium around 1:45 a.m. through the sliding glass doors. Barbara awoke when she heard Rachael and Allen talking. Allen and Barbara argued, and Barbara threatened to call the police to report Allen was kidnapping Rachael. When Barbara entered her bedroom to use the phone, Allen followed her, shut the door, and attacked Barbara. Hearing the struggle, Rachael entered the bedroom and tried to intervene, but Allen shoved her into a wall. After the killing, Allen slammed Rachael against a wall and directed her to retrieve cleaning materials from downstairs and assist him in disposing of Barbara's body and belongings. Allen did not want Rachael to "get in trouble" for assisting him after the murder, so they agreed that if they were arrested, she would say she had been kidnapped. The jury was unpersuaded by Rachael's testimony and convicted her of first degree murder for the stabbing death of Barbara, but found the allegation she personally used a knife in the slaying not to be true.

On October 28, 2019, the CDCR sent a letter to the superior court recommending Mullenix's sentence be recalled pursuant to Penal Code section 1170, subdivision (d). On February 5, 2020, the trial court read and considered the letter in chambers and denied the request to recall and resentence Rachael. There were no appearances by the parties. The court directed the clerk to send notice of the ruling to the parties.

In March 2020, Mullenix filed a motion to vacate the trial court's ex parte ruling, contending she had been denied the rights to be personally present, to be represented and assisted by counsel, and to due process of law under the Sixth and Fourteenth Amendments to the United States Constitution. The prosecution filed opposition asserting that no hearing was required to address the CDCR's request for

4

recall and resentencing, contending that the language in Penal Code section 1170, subdivision (d), is permissive, not mandatory, in respect to holding a hearing to address the CDCR's request.

On June 22, 2020, with no appearance of the parties, the trial court issued its order denying Mullenix's motion to vacate. Rachael filed a timely notice of appeal.

## DISCUSSION

Mullenix cites *People v. McCallum* (2020) 55 Cal.App.5th 202 (*McCallum*), which addressed the identical issue in this appeal. The *McCallum* court held that while there was no right to a hearing, the trial court abused its discretion by rejecting the CDCR's recommendation without first allowing defendant to submit information necessary for the court to exercise its discretion whether to follow the recommendation. (*Id.* at p. 216.) The *McCallum* court reversed the trial court's order declining to recall defendant's sentence and remanded the matter to the court to allow the parties to submit information relevant to the CDCR's recommendation and to provide briefing on whether the trial court should follow the recommendation. After allowing the parties to submit evidence, the trial court was directed to exercise its discretion whether to recall and resentence the defendant. (*Id.* at p. 219.)

The Attorney General agrees that for the limited purpose of determining whether to recall a sentence following the CDCR's recommendation, the court should consider information from either the inmate or the prosecution if requested. We agree and accept the concession. However, we disagree with Rachel she has a right to personally appear before the court. (See *McCallum, supra,* 55 Cal.App.5th at p. 215.)

## DISPOSITION

The trial court's order denying Mullinex's motion to vacate is reversed. The matter is remanded, and the trial court is directed to consider evidence relevant to the

5

decision of whether to recall Mullinex's sentence submitted by either Mullinex or the prosecution.


                                              O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


MOORE, J.